**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:19-cr-00240-KJD-VCF-1 |
| Plaintiff, | **Report and Recommendation** |
| vs. | MOTION TO DISMISS FOR UNCONSTITUTIONALLY VAGUE STATUTE [ECF No. 67] |
| JAYSON MICHAEL BABBITT, | |
| Defendant. | |

Before the Court is defendant Jayson Michael Babbitt's motion to dismiss for unconstitutionally vague statute. (ECF No. 67). The Court recommends denying the motion.

**I.      Background**

Defendant allegedly sold five AR-15 semi-automatic guns to an undercover officer that the government claims were modified to shoot automatically. (ECF No. 13). The government charged defendant Babbitt with dealing in firearms without a license under 18 U.S.C. § 922(a)(1)(A) (Count One), unlawful possession of a machinegun under 18 U.S.C. § 922(o) (Counts Two and Four), and making a firearm in violation of the National Firearms Act (machinegun) under 26 U.S.C. § 5861(f) (Counts Three and Five). (*Id*.)

The defendant's motion challenged the definition of "machinegun" under 26 U.S.C. § 5845(b) as unconstitutionally vague. (ECF No. 67 at 4). The defendant also argued that the language "designed to shoot…automatically" is not definite enough for ordinary people to understand what weapons are

1

covered under this definition. (*Id.*) On July 8, 2020, this Court held a hearing and the parties agreed to delay argument in this case until the Ninth Circuit rendered its decision in a case with similar issues. See *United States v. Kuzma*, 967 F.3d 959 (9th Cir. 2020) ("*Kuzma*"). After the Ninth Circuit issued its opinion in *Kuzma*, the Court held a second hearing and set a briefing schedule for the parties to file supplemental briefs. (ECF No. 86).

The Ninth Circuit held in *Kuzma* that, "the statutory definition of 'machine gun' [in 26 U.S.C. § 5845(b)] is not unconstitutionally vague on its face because the phrase a 'weapon which was designed to shoot automatically' provided both sufficient notice as to what was prohibited and sufficient guidance to prevent against arbitrary enforcement." *United States v. Kuzma*, 967 F.3d 959, 961 (9th Cir. 2020). The Ninth Circuit also held that, "the phrase a 'weapon which is designed to shoot automatically' provides both sufficient notice as to what is prohibited and sufficient guidance to prevent against arbitrary enforcement [and is] not unconstitutionally vague on its face." *Kuzma*, 967 F.3d at 961. The parties filed their supplemental briefs, and the Court held a hearing on the merits of the motion. (ECF No. 96).

Defendant challenges in his supplement the constitutionality of the definition of "designed to shoot…automatically" as overbroad. (ECF No. 89 at 2). Defendant also argues that the phrase "single function of the trigger," along with § 5845(b) as a whole, is vague and overbroad because it fails to define the criminal offense in a way that allows ordinary people to understand what conduct is prohibited and violates the Second Amendment. (*Id.*)

At the November 25, 2020 hearing on the merits, the defendant clarified that he is only making a facial challenge, and not an as applied challenge, to the statute. (ECF No. 96). The government argues in its supplement that Babbitt cannot make a facial challenge[1] because this is not a First Amendment case:

---

[1] See *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) ("[w]e consider whether a statute is vague as applied to the particular facts at issue").

it argues his conduct here is clearly prohibited, i.e. the Court can only consider the statute based on the particular circumstances of this case. (ECF No. 91 at 5).

The defendant previously argued in his reply (before *the Kuzma* decision) that recent Supreme Court precedent holds defendants may raise facial challenges when their conduct might be covered by the charging statute. (ECF No. 73 at 3). At the hearing, the defendant cited to footnote 10 in *Kuzma* to refute the government's assertion regarding whether he may make a facial challenge, "[t]he facial invalidations in these three cases do, however, refute the Government's assertion that, outside the First Amendment context, only as-applied vagueness challenges may be considered." *United States v. Kuzma*, 967 F.3d 959, 971 n.10 (9th Cir. 2020), citing to *Johnson v. United States*, 576 U.S. 591, 592, 135 S. Ct. 2551, 2555 (2015), *United States v. Davis*, 139 S. Ct. 2319, 2326-27, 204 L. Ed. 2d 757 (2019), and *Sessions v. Dimaya*, 138 S. Ct. 1204, 1214-15, 200 L. Ed. 2d 549 (2018).

The defendant argues in the supplement and at the hearing that an ordinary person cannot understand what "single function of the trigger" means, or what conduct this language prohibits. (ECF No. 89 at 3). The government argued at the hearing that the Bureau of Alcohol, Tobacco, Firearms and Explosives regulations, published in the Code of Federal Regulations, interpret the term "single function of the trigger" to be synonymous with "single pull of the trigger" and thus give fair notice of what weapons are encompassed by the definition. The defendant argued at the hearing that the Court should not consider the ATF's definition. The government also argues that the Ninth Circuit has already determined that machine guns are not protected by the Second Amendment.[2] (ECF No. 91 at 15).

---

[2] Citing to *United States v. Gilbert*, 286 Fed. Appx. 383, 386 (9th Cir. 2008)("Under *Heller*, individuals still do not have the right to possess machine guns ...")

## II. Analysis

### a. Legal Standard

A machinegun is defined under the National Firearms Act as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person

26 U.S.C. § 5845(b).

### b. Fifth Amendment

The Due Process Clause of the Fifth Amendment "prohibits the Government from 'taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.'" *United States v. Kuzma*, 967 F.3d 959, 967 (9th Cir. 2020) (citing to USCS Const. Amend. 5) (quoting *Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551, 2556 (2015)); see also *Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018). Per the Code of Federal Regulations, 27 CFR § 479.11 states that 26 U.S.C. § 5845(b), use of the phrase "single function of the trigger" is to mean "a single pull of the trigger and analogous motions."

"Because 'criminal laws are for courts, not for the Government, to construe,' the Supreme Court has repeatedly rejected the view "that 'the Government's reading of a criminal statute is entitled to any deference.'" *Kuzma*, 967 F.3d at 971, citing to *Abramski v. United States*, 573 U.S. 169, 191, 134 S. Ct. 2259, 189 L. Ed. 2d 262 (2014) (quoting *United States v. Apel*, 571 U.S. 359, 369, 134 S. Ct. 1144, 188

4

L. Ed. 2d 75 (2014)). "Thus, in *Abramski*, the Supreme Court explained that it 'put aside' ATF's about-face in how the agency construed the statutory provision at issue there by pointedly observing: 'We think ATF's old position no more relevant than its current one—which is to say, not relevant at all.'" *Kuzma* 967 F.3d at 971, citing to *Abramski* 573 U.S. at 191.

"We consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'…We have said that when a statute 'interferes with the right of free speech or of association, a more stringent vagueness test should apply.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19, 130 S. Ct. 2705, 2718-19 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 499, 102 S. Ct. 1186 (1982).

"The essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct." *Jordan v. De George*, 341 U.S. 223, 230, 95 L. Ed. 886, 71 S. Ct. 703 (1951). To show that a statute is unconstitutionally vague, the moving party must prove that the statute: (1) does not define the conduct it prohibits with sufficient definiteness; and (2) does not establish minimal guidelines to govern law enforcement. *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004); *United States v. Davis*, 36 F.3d 1424, 1434 (9th Cir. 1994); see also *United States v. Skilling*, 561 U.S. 358, 402-03 (2010)("To satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'")(quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (alteration in original)).

    **c. Second Amendment**

The Second Amendment provides that "the right to the people to keep and bear arms shall not be infringed." The right to bear arms is an individual right. *D.C. v. Heller*, 554 U.S. 570, 591, 128 S. Ct.

2783, 2797, 171 L.Ed. 2d 637 (2008). The right, however, is not unlimited. *Id*. at 2799. The Second Amendment does not protect the right to possess weapons "not typically possessed by law-abiding citizens for lawful purposes." *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) (quoting *Heller*, 554 U.S. at 625, 128 S.Ct. 2783)). "Under *Heller*, individuals still do not have the right to possess machine guns…" *United States v. Gilbert*, 286 Fed.Appx. 383, 386 (9th Cir. 2008); *Henry*, 688 F.3d at 640. "[T]he Second Amendment does not apply to machine guns. Moreover, because we conclude that machine gun possession is not entitled to Second Amendment protection." *Henry*, 688 F.3d at 639–40 (9th Cir. 2012.).

### d. Whether the Statute is Unconstitutional on its Face

Assuming *arguendo* that (1) the defendant can make a facial challenge[3] and (2) *Chevron* deference does not apply to criminal statutes[4], the Court independently finds that the statute is not

---

[3] "To the extent *Johnson* and *Dimaya* bypassed as-applied challenges and proceeded directly to facial vagueness, that approach appears to have turned on the 'exceptional circumstances' of the provisions at issue." *Faisal Nabin Kashem v. Barr*, 941 F.3d 358, 377 (9th Cir. 2019). The Court does not reach the question of whether such exceptional circumstances apply here or whether footnote 10 in *Kuzma* indicates that the Ninth Circuit will take a new approach to facial challenges pursuant to *Johnson* and *Dimaya* going forward. Prior to *Johnson* and *Dimaya*, the Ninth Circuit held that when a vagueness challenge does not involve the First Amendment, the court does not consider facial challenges, but only whether it is unconstitutionally vague as applied to the defendant who is on trial. See *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013); *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001); see also *United States v. Agront*, 773 F.3d 192, 195 (9th Cir. 2014) ("[b]ecause [the defendant] has not argued that his First Amendment rights are at issue and has brought only an as-applied challenge, we need only examine the vagueness challenge under the facts of the particular case and decide whether, under a reasonable construction of the statute, the conduct in question is prohibited") (internal punctuation omitted).

[4] At the hearing, defendant cited to Justice Gorsuch's concurrence in denying certiorari in *Guedes* wherein he takes the position that *Chevron* does not apply to agency interpretations of criminal statutes. See *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 S. Ct. 789, 790, 206 L. Ed. 2d 266 (2020)( Gorsuch J., cert. denied, concurring)(citing to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc*. 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))(quoting *United States v. Apel*, 571 U.S. 359, 369 (2014)) ("*Chevron*…has no role to play when liberty is at stake….this Court has 'never held that the Government's reading of a criminal statute is entitled to any deference.'")

unconstitutionally vague or overbroad on its face because the statute gives fair notice of the conduct it punishes. The Ninth Circuit held in *Kuzma* that the phrase a 'weapon which was designed to shoot automatically' provided both sufficient notice as to what was prohibited and sufficient guidance to prevent against arbitrary enforcement" and the defendant has not made any showing that this phrase is overbroad.

The Ninth Circuit also held in *Henry* that, "machine guns are highly 'dangerous and unusual weapons' that are not 'typically possessed by law-abiding citizens for lawful purposes.'" *Henry*, 688 F.3d at 640, citing to *Heller,* 54 U.S. at 625, 627, 128 S.Ct. 2783. The Court thus finds that the defendant has not made a showing that the statute prohibits firearms protected by the Second Amendment.

The defendant also did not make a showing that § 5845(b) as a whole is vague and overbroad because many courts, including the *Kuzma* court, have upheld § 5845(b). The defendant focused his arguments on the phrase "single function of the trigger" and argued that this phrase is vague and overbroad.

### i. Plain Meaning

When interpreting a statute, "analysis begins with the language of the statute…we must give words their 'ordinary or natural' meaning." *Leocal v. Ashcroft*, 543 U.S. 1, 8–9, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (quoting *Smith v. United States*, 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993)). 127 F.3d 1108 127 F.3d 1108. "We assume that the purpose of the statute is communicated by the ordinary meaning of the words Congress used; therefore, absent any clear indication of a contrary purpose, the plain language is conclusive." *United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009).

"When the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Lamie v. U.S.*

*Trustee*, 540 U.S. 526, 534 (2004) (citation and internal quotation marks omitted). When the language of a statute is unambiguous, the judicial inquiry ends. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

Defendant argues that "function" creates ambiguity because a shooter's intent might diverge from that of the manufacturer. (ECF No. 89 at 5-6). The defendant argued at the hearing that if the statute said, "pull of the trigger" that would not be vague because the word "function" could mean, "I want this gun to function to have 12 shots in quick succession" while "pull" is the "actual, physical, determination."

In *Kuzma*, the Ninth Circuit rejected a similar argument and concluded that whether, "a weapon is 'designed to shoot' automatically has a specific configuration of objective structural features that, in the absence of any minor defect, would give the weapon the capacity to shoot automatically." 967 F.3d at 969-70. The clause "single function of the trigger" is governed by the phrase "designed to shoot," so there is no ambiguity as to hypothetical differences of intention between a user and a manufacturer.

The Court finds that a plain reading of the statute shows that a "single function of the trigger" does not lend itself to the defendant's hypothetical because a "single function" plainly indicates that one would have to physically initiate the weapon's firing mechanism, which could include pulling, depressing, or otherwise activating the triggering device. The plain language of the statute gives fair notice of what weapons are encompassed by the definition. The term function is not vague in of itself, and when read with the rest of the statute, the average person would understand what a "single function of the trigger" resulting in multiple firings means. Since the language "single function of the trigger" is unambiguous the statute is not unconstitutional on its face.

### ii. Judicial Interpretations

Other courts have interpreted the phrase "single function of the trigger" and for decades have

found that the ordinary meaning of the phrase looks to the shooter's action in pulling the trigger; although these interpretations were not necessarily facial challenges, these judicial interpretations further support the Court's finding that the phrase "single function of the trigger" is unambiguous.

In *Staples v. U.S.*, the Supreme Court held that under the NFA, the statutory definition of "machinegun" encompasses a weapon that automatically fires more than one shot with a single pull of the trigger" as well as "any weapon which shoots, ... or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger," § 5845(b). 511 U.S. 600, 602, 114 S. Ct. 1793, 1795, 128 L. Ed. 2d 608 (1994). The *Staples* court stated, "as used here, the terms "automatic" and "fully automatic" refer to a weapon that fires repeatedly with a single pull of the trigger." *Id.* at 639. "[O]nce its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted." *Id.* "We use the term "semiautomatic" to designate a weapon that fires only one shot with each pull of the trigger..." *Id*.

The Tenth Circuit recognized that a weapon qualified as a machine gun where it could be fired automatically "by fully pulling the trigger." *United States v. Oakes*, 564 F.2d 384, 388 (10th Cir. 1977). And the Fifth Circuit held that a modified rifle was a machine gun because it "required only one action - pulling the switch [the defendant] installed to fire multiple shots" instead of requiring the shooter "to separately pull ... each time the weapon is fired." *United States v. Camp*, 343 F.3d 743, 745 (5th Cir. 2003). The court held that § 5845(b) "expressly contemplate[s]" this distinction by focusing on "a single function of the trigger." *Id.* (emphasis in original).

The function of a trigger is "to initiate the firing sequence" of a weapon. *United States v. Jokel*, 969 F.2d 132, 135 (5th Cir. 1992) (per curiam). Read in its full context, the phrase "'by a single function of the trigger' describes the action that enables the weapon to 'shoot ... automatically ... without manual reloading,' not the 'trigger' mechanism." *United States v. Evans*, 978 F.2d 1112, 1113 n.2 (9th Cir.

1992); accord *United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009) (noting that "a single function of the trigger" "set [s] in motion" the automatic firing of more than one shot); *United States v. Carter*, 465 F.3d 658, 664-65 (6th Cir. 2006). "The machine-gun provision…explicitly adopts a test of objective capability because it covers any weapon 'which shoots, is designed to shoot, or can be readily restored to shoot' automatically multiple shots with a single trigger pull." See *United States v. Crooker*, 608 F.3d 94, 98 (1st Cir. 2010).

These interpretations of the phrase "single function of the trigger" by other courts supports a finding that the language is not vague because other judges have looked to the plain meaning of the phrase and independently reached for words that indicate action, such as "pull", when interpreting the statute. The NFA's definition of function is therefore well understood and not vague or overbroad.

### iii. Legislative History

As this language is unambiguous, further inquiry is unnecessary. Even if the defendant could show that "single function of the trigger" is ambiguous in a plain reading, however, the legislative history shows that Congress deliberately chose the word "function" over other verbs, such as "pull" to avoid loopholes. Courts look to congressional intent to interpret a statute when a statute is ambiguous because "[t]he plain meaning of a statute is always controlling unless that meaning would lead to absurd results." *S.E.C. v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003) (internal quotation marks omitted).

The government argued in its supplement that the legislative history confirms that when Congress enacted the NFA it understood that in the normal course, a machine gun would be fired by a traditional pull trigger, and that for such weapons, a "single function of the trigger" equated to the shooter's single pull of the trigger. (ECF No. 91 at 7). The government cites to the House Report accompanying the bill that ultimately became the NFA, which states that the bill "contains the usual definition of machine gun as a weapon designed to shoot more than one shot without reloading and by a

single pull of the trigger." H.R. Rep. No. 73-1780, at 2H.R. Rep. No. 73-1780, at 2.  The government cites a congressional hearing leading up to the NFA's enactment, and notes that the National Rifle Association's then-president testified that a gun "which is capable of firing more than one shot by a single pull of the trigger, a single function of the trigger, is properly regarded, in my opinion, as a machine gun." Final Rule at 66518.

At the hearing, the defendant argued that the NRA then-president's testimony also revealed that Congress considered using the word operation rather than function. The defendant argued that "operation," or specifying "pull" or "push" probably would have been better since "function" is vague. The legislative history shows, however, that since not all firearms use a traditional pull trigger, Congress intended to use language designed to capture the full range of possible trigger devices with the term "single function of the trigger" to cover weapons that use triggers activated by pushing a paddle, pressing a button, flipping a switch, or otherwise initiating the firing sequence without pulling a traditional trigger. See, e.g., *United States v. Fleischli*, 305 F.3d 643, 655-56 (7th Cir. 2002) (holding that a minigun fired by "an electronic switch" was a machine gun). The legislative history supports the Court's finding that the defendant has not made a showing that the statute is vague or overbroad on its face.

### e. Conclusion

The statute's plain language is unambiguous, and the Court must uphold it according to its terms. The definition of "single function of the trigger"  is so well imbedded in federal law as to not mislead anyone who desires to conform his conduct to the requirements of this law. The definition is sufficiently definite and does not encourage arbitrary and discriminatory enforcement. The statute is not unconstitutionally vague or overbroad.

ACCORDINGLY,

IT IS RECOMMENDED that defendant Jayson Michael Babbitt's motion to dismiss for unconstitutionally vague statute (ECF No. 67) be DENIED.

IT IS SO RECOMMENDED.

DATED this 10th day of December 2020.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE